**EPSTEIN DRANGEL LLP**
Jason M. Drangel
jdrangel@ipcounselors.com
Ashly E. Sands
asands@ipcounselors.com
Kerry B. Brownlee
kbrownlee@ipcounselors.com
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone:    212-292-5390
Facsimile:     212-292-5391
*Attorneys for Plaintiff,*
*HDMI Licensing Administrator, Inc.*
*Pro Hac Vice Applications Forthcoming*

**BESHADA FARNESE LLP**
Peter J. Farnese (SBN 251204)
pjf@bfllplaw.com
11601 Wilshire Blvd., Suite 500
Los Angeles, California 90025
Telephone:    310-356-4668
Facsimile:     310-388-1232
*Attorneys for Plaintiff,*
*HDMI Licensing Administrator, Inc.*

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION**

| | |
|---|---|
| HDMI LICENSING ADMINISTRATOR, INC., <br><br> Plaintiff, <br><br> v. <br><br> CHUNGHSIN TECHNOLOGY GROUP CO., LTD. f/k/a NEW CENTURY OPTRONICS CO., LTD. <br><br> Defendant. | CASE NO.: <br> **COMPLAINT FOR:** <br><br> 1. BREACH OF CONTRACT; <br> 2. TRADEMARK INFRINGEMENT (15 U.S.C. §1114(a)); <br> 3. TRADEMARK COUNTERFEITING (15 U.S.C. §1114(b), 1116(d) and 1117(b)-(c)); <br> 4. FALSE DESIGNATION OF ORIGIN, PASSING OFF & UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a); <br> 5. UNFAIR COMPETITION (CAL. BUS. & PROF. CODE § 17200); <br> 6. COMMON LAW UNFAIR COMPEITION |

COMPLAINT

Plaintiff, HDMI Licensing Administrator, Inc. ("HDMI LA or "Plaintiff"), a Delaware corporation, by and through its undersigned counsel, alleges as follows:

## NATURE OF THE ACTION

1. This case involves claims for breach of contract and trademark infringement of Plaintiff's federally registered trademarks in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114; counterfeiting of Plaintiff's federally registered trademarks in violation of 15 U.S.C. §§ 1114, 1116(d), and 1117(b)-(c); unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. § 1125(a)); and related state law claims for unfair competition arising from Defendant's breach of the HDMI Specification Adopter Agreement (*see* Exhibit B) and infringement of Plaintiff's HDMI Trademarks (as defined *infra*), including, without limitation, by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying offering for sale and/or selling unlicensed, noncompliant, infringing and/or counterfeit HDMI components and/or products (collectively hereinafter referred to as, "Unauthorized Product(s)").

## JURISDICTION AND VENUE

2. This Court has federal subject matter jurisdiction, pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b), and 15 U.S.C. § 1121, because this is a trademark action that arises under the laws of the United States. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

3. In addition, this Court has jurisdiction in this District because the Parties specifically agreed and consented to the jurisdiction of the state and Federal courts in Santa Clara County, California in any action arising from the HDMI Specification Adopter Agreement. *See* Exhibit B at ¶ 9.6.

4. This Court has general and/or specific personal jurisdiction over Defendant because, upon information and belief, Defendant conducts business, on a continuous and systematic basis, in the State of California and in this judicial district, and/or otherwise avails itself of the privileges and protections of the laws of the State of California, such that this Court's assertion of jurisdiction over Defendant does not offend traditional notions of fair play and due process.

5. Venue is proper in this District because Plaintiff is located in this District and the Parties specifically agreed and consented to venue in the state and Federal courts in Santa Clara

County, California in any action arising from the HDMI Specification Adopter Agreement. *See* Exhibit B at ¶ 9.6.

## PARTIES

6. HDMI LA is a Delaware corporation with its principal place of business located in San Jose, California. HDMI LA is the successor in interest to HDMI Licensing, LLC, the entity which previously administered the HDMI Trademarks and was responsible for the licensing of the HDMI Trademarks to HDMI Adopters, and for the maintenance, policing, and enforcement of the HDMI Trademarks.

7. Defendant Chunghsin Technology Group Co. Ltd. f/k/a New Century Optronics Co., Ltd., known as "CNC" ("CNC" or "Defendant")[1], is a Chinese entity located at No. 618 Gongren West Road, JiaoJiang Area, Taizhou, Zhejiang, 318000, China.

## GENERAL ALLEGATIONS

### The HDMI Specification, HDMI Trademarks, and HDMI Adopters

8. Over a decade ago, leading consumer electronics manufacturers, including Hitachi Maxell, Ltd., Panasonic Corporation, Koninklijke Philips Electronics N.V., Silicon Image, Inc., Sony Corporation, Technicolor S.A. and Toshiba Corporation (the "HDMI Founders"), banded together to create the High-Definition Multimedia Interface specification (the "HDMI Specification"), a next-generation, industry-leading and de-facto digital interface specification for connecting consumer electronics products capable of sending or receiving an HD signal.

9. Specifically, the HDMI Specification enables a consumer to use a single cable (an "HDMI Cable") to connect a high-definition source device—such as a cable TV set-top box, a Blu-ray player, an HD-DVR, or an Xbox—to a high-definition display such as a digital television, monitor, video projector, or digital audio device.

---

[1] Upon information and belief, on or about 2014, CNC changed its corporate name from "New Century Optronics Co., Ltd." to Chunghsin Technology Group Co., Ltd.

-2-
COMPLAINT

10. This is an example of an HDMI Cable:



To understand the significant advance that the HDMI Specification represents, it is helpful to examine the connection between a digital TV and a cable TV set-top box.  To connect a digital TV to a cable TV set-top box, a user inserts one end of the HDMI Cable into the cable TV set-top box's HDMI output port and the other end into the digital TV's HDMI input port, as pictured below:

11. Connecting a cable box to a digital TV without using an HDMI Cable is a different and inferior experience.  A consumer would typically need to use three cables, each carrying an analog signal, to complete the hookup, thereby resulting in a clutter of cables and inferior image quality.  On the other hand, the use of a singular HDMI Cable delivers uncompressed audio and video, and offers the finest image quality of any cable type available today.

12. The HDMI Specification is ubiquitous and is the undisputed global standard for connecting high-definition transmitters to high-definition displays.  Beginning in in 2009, almost all recently manufactured digital TVs, AV receivers, DVRs, Blu-ray disc players, and set-top boxes, as well as many multimedia PCs, laptops and netbooks, gaming consoles, camcorders, digital still cameras, mobile devices, etc., incorporate the HDMI Specification.

13. As of the third quarter of 2018, the HDMI Specification had been licensed to over 1,700 of the largest and most innovative electronics and PC manufacturers worldwide, such as Apple, Inc.,

Samsung Electronics, Inc. and Sharp Corporation, etc., which have manufactured over 5 billion products using the HDMI Specification that have passed HDMI LA's required certification testing process ("HDMI Adopter(s)" and "Licensed Product(s)", respectively). HDMI Adopters are identified on HDMI LA's website at http://www.hdmi.org.

14. The HDMI Trademarks (defined *infra*) are also ubiquitous, appearing on Licensed Products throughout the world. The HDMI Trademarks convey to consumers that products marked with the HDMI Trademarks comply with the technical elements of the HDMI Specification, and have been tested and certified to work seamlessly with other Licensed Products bearing the HDMI Trademarks.

15. HDMI LA has protected its valuable rights by registering several trademarks containing the HDMI designation on the Principal Register of the United States Patent and Trademark Office in connection with a range of goods and services, including audio-visual and information communications products, including, but not limited to:

| Mark | Reg. No. | Reg. Date |
| --- | --- | --- |
| HDMI | 3,268,924 | July 24, 2007 |
| HDMI HIGH DEFINITION MULTIMEDIA INTERFACE  **HDMI** HIGH-DEFINITION MULTIMEDIA INTERFACE | 3,442,135 | June 3, 2008 |

(collectively, the "HDMI Trademarks"). A true and correct copy of the registrations for the HDMI Trademarks are attached hereto as **Exhibit A** and incorporated herein by reference ("HDMI Registrations").[2]

---

[2] While the certificates for the HDMI Registrations indicate that HDMI Licensing, LLC is the owner of the HDMI Trademarks (*see* Exhibit A), all right, title and interest in the HDMI Trademarks was assigned to HDMI LA—as indicated *supra*, the successor in interest to HDMI Licensing, LLC—on
(Continued...)

16. The HDMI Registrations for the HDMI Trademarks are valid, subsisting and incontestable. They have not been abandoned, revoked, or cancelled.

17. The HDMI Trademarks are inherently distinctive and valuable. HDMI LA has invested substantial time, effort and money in developing and promoting public recognition of the HDMI Trademarks, which have been in use since as early as December 2002.

18. As the agent for the HDMI Specification, HDMI LA is responsible for the licensing of the HDMI Trademarks to HDMI Adopters, and for the maintenance, policing, and enforcement of the HDMI Trademarks to ensure that consumers continue to receive the high-quality goods and services that the public has come to expect from HDMI LA, HDMI Adopters and the Licensed Products.

19. In addition to being responsible for licensing and administering the HDMI Specification and the HDMI Trademarks, HDMI LA is responsible for educating retailers and consumers regarding the benefits of the HDMI Specification to retailers and consumers.

20. The HDMI Founders have designated authorized testing centers ("ATC(s)"), where licensed HDMI Adopters must submit a representative sample of the first production model of each category of Licensed Product for compliance testing prior to mass production and/or distribution. For a Licensed Product to claim conformance to the HDMI Specification and/or bear any HDMI Trademarks, it must implement all portions of the HDMI Specification required for the specific type of Licensed Product and pass all applicable testing procedures. Each Adopter is responsible for submitting Licensed Products to an ATC, and performing subsequent tests to ensure that the Licensed Products function correctly, comply fully with the HDMI Specification, and are interoperable.

21. The HDMI Trademarks signify the physical, logical, and electrical integrity and interoperability of every Licensed Product.

22. HDMI LA invests significant time and resources identifying Unauthorized Products.

---

(...Continued)

January 2, 2017, and said assignment was recorded with the United States Patent and Trademark Office on March 3, 2017.

-5-
COMPLAINT

**Defendant's Breach of the HDMI Specification Adopter Agreement**

23. As described above, HDMI LA provides and administers the licensing of the HDMI Specification and HDMI Trademarks through the HDMI Adopter program.

24. On or about October 29, 2009, HDMI LA and Defendant, through the predecessor entity New Century Optronics Co., Ltd., signed the HDMI Specification Adopter Agreement, which, among other things, set forth the conditions whereby Defendant would be considered an HDMI Adopter and was authorized to make use of the HDMI Specification and HDMI Trademarks. A true and correct copy of the signed HDMI Specification Adopter Agreement is attached hereto as **Exhibit B**.

25. Defendant's last royalty payment was made in May, 2017, although Defendant has continued to make use of the HDMI Specification and HDMI Trademark(s). Defendant has not reported or has under reported sales and has significantly underpaid and/or failed to pay royalties due to HDMI LA under the HDMI Specification Adopter Agreement. Additionally, Defendant has failed to cooperate in an audit conducted by an independent auditor engaged by HDMI LA pursuant to the terms of the HDMI Specification Adopter Agreement.

26. On or about April 30, 2018, HDMI LA provided a termination notice to Defendant pursuant to Section 9.10 of the HDMI Specification Adopter Agreement, which, among other things, put Defendant on notice of the above-referenced breaches. A true and correct copy of the April 30, 2018 termination notice is attached hereto as **Exhibit C**.

27. Defendant failed to cure all of its breaches of the HDMI Specification Adopter Agreement within 30 days of its receipt of the April 30th notice. Consequently, on June 27, 2018, HDMI LA advised Defendant that if it did not finalize a settlement agreement with HDMI LA within 10 days, HDMI LA would terminate Defendant's HDMI Specification Adopter Agreement in full, Defendant would be listed on the Terminated Adopters List and HDMI LA would take all necessary enforcement actions to protect its intellectual property. A true and correct copy of the June 27, 2018 final termination notice is attached hereto as **Exhibit D**.

**Defendant's Infringing Conduct**

28. As described above, at least as early as May 31, 2018, Defendant was terminated as an HDMI Adopter pursuant to Paragraph 9.10, yet Defendant continues to, at a minimum, promote, sell and ship Unauthorized Products.

29. Due to its failure to cure its breaches of the HDMI Specification Adopter Agreement, Defendant is considered by HDMI LA to be a Terminated Adopter.

30. Accordingly, since being terminated, HDMI LA has not authorized, consented to, or licensed Defendant or its affiliates to use the HDMI Specification in and/or the use of the HDMI Trademarks on or in connection with any of Defendant's Unauthorized Products.

31. On November 16, 2018, HDMI LA, through its counsel, advised Defendant in writing that its continued sale of Unauthorized Products constituted breach of contract, trademark infringement and/or counterfeiting and unfair competition. Plaintiff demanded that Defendant cease and desist any and all manufacturing, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sales of the Unauthorized Products. A true and correct copy of the November 16, 2018 letter is attached hereto as **Exhibit E**.

32. Defendant, however, has continued its unlawful conduct.

33. The date of first use based on HDMI LA's HDMI Registrations for its HDMI Trademarks is no later than December 2002, well prior to Defendant's dealings in Unauthorized Products (including, without limitation: manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling).

34. Prior to and contemporaneous with its actions alleged herein, Defendant had knowledge of HDMI LA's ownership of its HDMI Trademarks and its HDMI Registrations, and the incalculable goodwill associated therewith, and in bad faith continued to make use of the HDMI Trademarks, while in breach of the HDMI Specification Adopter Agreement, and after termination as an HDMI Adopter.

35. Defendant has been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to HDMI LA's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of the HDMI Trademarks and Licensed Products.

36. Defendant's dealings in the Unauthorized Products, as alleged herein, has caused, and will continue to cause, consumer confusion, frustration, dissatisfaction and economic loss. Unauthorized Products that bear markings that are identical, or confusingly similar to, the HDMI Trademarks provide consumers with a false assurance that the Unauthorized Products that they have purchased are reliable and conform to HDMI LA's high standards and rigorous compliance testing when, in fact, they do not.

37. Defendant's breach of the HDMI Specification Adopter Agreement and its infringing, illegal actions also have impaired, and will continue to impair, the interests of HDMI Adopters, including manufacturers, content owners and service providers, who have invested billions of dollars in Licensed Products, by, among other things, depriving them of the significant value, reputation and integrity of the HDMI Specification and the HDMI Trademarks. Defendant's Unauthorized Products jeopardize the systems into which they are placed because they likely do not conform to HDMI LA's design specifications, production standards, or quality control, and thus, lack reliability. For example, when Defendant's Unauthorized Product(s) and Licensed Product(s) are used together, a consumer will not know which product caused an incompatibility issue, and may understandably, but incorrectly, attribute such issues to Licensed Products and/or HDMI Adopters.

### **HDMI LA Has Been Irreparably Harmed**

38. HDMI LA has suffered and is continuing to suffer irreparable harm and financial injury as a result of Defendant's conduct. The Unauthorized Products being manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold by Defendant is not subject to the same stringent design specifications, production standards, or quality control as Licensed Products. Upon information and belief, consumers who have purchased or otherwise obtained Unauthorized Products from Defendant and who have had negative experiences with the Unauthorized Products, will falsely attribute those negative experiences to HDMI LA. This is likely to erode the substantial goodwill that HDMI LA has spent years and millions of dollars in developing. In addition, HDMI LA is losing substantial licensing fees from Defendant's sales of, and substantial royalties from consumers' purchases of, Defendant's Unauthorized Products.

39. Unless enjoined, Defendant will continue to cause irreparable harm to HDMI LA.

## CAUSES OF ACTION

## COUNT I

**(Breach of Contract)**

40. HDMI LA repleads and incorporates the foregoing paragraphs as if fully set forth herein.

41. HDMI LA and Defendant entered into a valid contract (i.e., the HDMI Specification Adopter Agreement, *see* Exhibit B).

42. HDMI LA performed its contractual obligations to Defendant. To the extent any of HDMI LA's obligations might have not been performed, such absence of performance was excused or was caused by Defendant's acts and omissions, including Defendant's prior breaches of contract.

43. As described above, Defendant breached the HDMI Specification Adopter Agreement by significantly underpaying and/or failing to pay royalties due to HDMI LA; failing to cooperate in an audit, pursuant to the plain terms of the HDMI Specification Adopter Agreement; and, since being terminated, continuing its use of the HDMI Specification in and/or the use of the HDMI Trademarks on or in connection with any of Defendant's Unauthorized Products

44. Defendant's breaches of the HDMI Specification Adopter Agreement have caused HDMI LA to incur significant damages to be proven at trial.

## COUNT II

**(Trademark Infringement under the Lanham Act § 32(a), 15 U.S.C. § 1114(a))**

45. HDMI LA repleads and incorporates the foregoing paragraphs as if fully set forth herein.

46. HDMI LA is the owner of the HDMI Trademarks and HDMI Registrations.

47. Plaintiff has continuously used the HDMI Trademarks in interstate commerce since at least as early as 2002.

48. Plaintiff, as the owner of all right, title and interest in and to its HDMI Trademarks and HDMI Registrations, has standing to maintain an action for trademark infringement under § 32 of the Lanham Act, 15 U.S.C. § 1114.

49. Defendant, as a Terminated Adopter, did not have the consent or authorization of HDMI LA as owner of the HDMI Trademarks, and the HDMI Registrations thereof, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, offer for sale and/or sell Unauthorized Products into the stream of commerce.

50. Defendant knowingly and intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Unauthorized Products, bearing and/or utilizing marks that are reproductions, counterfeits, copies and/or colorable imitations of the HDMI Trademarks and/or which are identical or confusingly similar to the HDMI Trademarks.

51. Defendant knowingly and intentionally reproduced, copied, and colorably imitated the HDMI Trademarks and applied such reproductions, copies, or colorable imitations to packaging, wrappers, receptacles, online listings and/or advertisements used in commerce upon, or in connection with, the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or sale of Defendant's Unauthorized Products.

52. As described above, Defendant was, at the time it engaged in its illegal and infringing actions as alleged herein, actually aware that Plaintiff is the owner of the HDMI Trademarks and HDMI Registrations.

53. Defendant's use of the HDMI Trademarks has caused, and is likely to continue to cause confusion, to cause mistake, or to deceive consumers as to the source or origin of the Unauthorized Products and is likely to deceive the public into believing that Defendant's Unauthorized Products are Licensed Products, or are otherwise associated with, or authorized by HDMI LA.

54. Defendant's actions have been deliberate and committed with knowledge of Plaintiff's rights and goodwill in the HDMI Trademarks, as well as with bad faith and the intent to cause confusion, mistake and deception.

55. Defendant's continued, knowing and intentional use of HDMI Trademarks, without HDMI LA's consent or authorization, constitutes intentional infringement of HDMI LA's federally registered HDMI Trademarks in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.

56. As a direct and proximate result of Defendant's illegal and infringing actions, HDMI LA has suffered substantial monetary loss and irreparable injury to its business, reputation, and rights

in and to the HDMI Trademarks and goodwill associated therewith, for which it has no adequate remedy at law, and thus, unless immediately enjoined, Defendant will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff.

57. Based on Defendant's actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the injury that Plaintiff has sustained, and will sustain, as a result of Defendant's illegal and infringing actions, and all gains, profits and advantages obtained by Defendant as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorney's fees and costs.

## COUNT III

**(Trademark Counterfeiting under the Lanham Act, 15 U.S.C § 1114(b), 1116(d), and 1117(b)-(c))**

58. HDMI LA repleads and incorporates the foregoing paragraphs as if fully set forth herein.

59. HDMI LA is the owner of the HDMI Trademarks and HDMI Registrations.

60. Without the consent or authorization of HDMI LA, and having knowledge of HDMI LA's well-known and prior rights in and to the HDMI Trademarks and having knowledge that Defendant's Unauthorized Products bear counterfeit marks, Defendant intentionally reproduced, copied, and/or colorably imitated the HDMI Trademarks and/or used spurious designations that are identical with, or substantially indistinguishable, from one or more of the HDMI Trademarks on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Unauthorized Products.

61. Defendant has manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, retailed, offered for sale and/or sold its Unauthorized Products to the purchasing public in direct competition with Plaintiff, in or affecting interstate commerce, and/or has acted with reckless disregard of Plaintiff's rights in and to the HDMI Trademarks, through its facilitation, financing and/or participation in such activities.

62. Defendant has applied its reproductions, counterfeits, copies, and colorable imitations of the HDMI Trademarks to packaging, point-of-purchase materials, advertisements and/or promotions intended to be used in commerce upon, or in connection with, the manufacturing, importing, exporting,

advertising, marketing, promoting, distributing, display, offering for sale, and/or sale of Unauthorized Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Unauthorized Products, and is likely to deceive consumers, the public and the trade into believing that the Unauthorized Products sold by Defendant originate from, are associated with or are otherwise authorized by HDMI LA.

63. Defendant's unauthorized use of the HDMI Trademarks on or in connection with the Unauthorized Products was done with notice and full knowledge that such use was not authorized or licensed by HDMI LA and with the deliberate intent to unfairly benefit from the incalculable goodwill inherent in the HDMI Trademarks.

64. Defendant's actions constitute willful counterfeiting of Plaintiff's HDMI Trademarks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d), and 1117(b)-(c).

65. As a direct and proximate result of Defendant's illegal actions as alleged herein, HDMI LA has suffered substantial monetary loss and irreparable injury to its business, reputation, and rights in and to the HDMI Trademarks and goodwill associated therewith, for which it has no adequate remedy at law, and thus, unless immediately enjoined, Defendant will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff.

66. Based on Defendant's actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained and will sustain as a result of Defendant's illegal actions, as alleged herein, and all gains, profits and advantages obtained by Defendant as a result thereof, enhanced discretionary damages, treble damages, and/or statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale, or distributed and reasonable attorney's fees and costs.

## COUNT IV

**(False Designation of Origin, Passing Off & Unfair Competition under the Lanham Act § 43(a), 15 U.S.C. § 1125(a))**

67. HDMI LA repleads and incorporates the foregoing paragraphs as if fully set forth herein.

68. HDMI LA is the owner of the HDMI Trademarks and HDMI Registrations.

69. Defendant knowingly and willfully used in commerce marks that are identical or confusingly similar to and constitute reproductions of Plaintiff's HDMI Trademarks, and affixed, applied and used false designations of origin and false and misleading descriptions on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Unauthorized Products with the intent to cause confusion, to cause mistake and to deceive the purchasing public into believing, in error, that Defendant's Unauthorized Products are Licensed Products and/or that Defendant's Unauthorized Products are authorized, sponsored, approved, endorsed or licensed by HDMI LA, and/or that Defendant is affiliated, connected or associated with HDMI LA, thereby creating a likelihood of confusion by consumers as to the source of the Unauthorized Products, and allowing Defendant to capitalize on the goodwill associated therewith, and the consumer recognition of the HDMI Trademarks and Licensed Products, to Defendant's substantial profit in blatant disregard of HDMI LA's rights.

70. By manufacturing, importing, exporting and/or assisting and encouraging third parties to manufacture, import, export and by itself advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Unauthorized Products using marks that are identical and/or confusingly similar to and/or which constitute colorable imitations of the HDMI Trademarks, Defendant has traded off the extensive goodwill of HDMI LA and the Licensed Products to induce and did in fact induce, and intends to, and will continue to induce, customers to purchase Defendant's Unauthorized Products, thereby directly and unfairly competing with HDMI LA.  Such conduct has permitted, and will continue to permit, Defendant to make substantial sales and profits based on the goodwill and reputation of HDMI LA and the HDMI Trademarks.

71. Defendant knew, or by the exercise of reasonable care, should have known, that its adoption and commencement of, and continuing use in commerce of marks that are identical or confusingly similar to and constitute a reproduction of Plaintiff's HDMI Trademarks would cause confusion, mistake, or deception among purchasers, users and the public.

72. Upon information and belief, Defendant's aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive the purchasing public and with the intent to trade on the goodwill and reputation of Plaintiff, its Licensed

-13-
COMPLAINT

Products and the HDMI Trademarks.

73. As a direct and proximate result of Defendant's aforementioned actions, Defendant has caused irreparable injury to Plaintiff by depriving Plaintiff of substantial licensing fees and of the value of its HDMI Trademarks as commercial assets, for which it has no adequate remedy at law, and unless immediately restrained, Defendant will continue to cause substantial and irreparable injury to Plaintiff and the goodwill and reputation associated with the value of the HDMI Trademarks in an amount as yet unknown, but to be determined at trial.

74. Based on Defendant's wrongful actions, Plaintiff is entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiff has sustained and will sustain as a result of Defendant's illegal and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendant as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

## COUNT V

### (Unfair Competition under Cal. Bus. & Prof. Code § 17200)

75. HDMI LA repleads and incorporates the foregoing paragraphs as if fully set forth herein.

76. California Business and Professions Code § 17200, *et seq.*, states that unfair competition shall mean and include any "unlawful, unfair or fraudulent business act or practice."

77. Defendant's unlawful and improper actions, as set forth above, are likely to cause confusion, mistake, and/or deception as to the source, origin, and/or sponsorship of Defendant's Unauthorized Products, and to falsely mislead consumers into believing that the Unauthorized Products themselves, along with packaging thereof, are those of, affiliated with, and/or approved by HDMI LA.

78. Accordingly, Defendant's unauthorized use of the HDMI Trademarks constitutes unfair competition in violation of California Business and Professionals Code § 17200, *et. seq*.

79. Defendant's acts of unfair competition have caused HDMI LA to sustain monetary damage, loss of money or property, and injury, in an amount to be determined at trial.

80. In light of the foregoing, HDMI LA is entitled to an injunction under California Business and Professions Code § 17200 *et seq.* restraining Defendant from engaging in further such unlawful conduct, as well as to restitution of those amounts unlawfully obtained by Defendant through its wrongful conduct.

## COUNT VI

### (Common Law Unfair Competition)

81. HDMI LA repleads and incorporates the foregoing paragraphs as if fully set forth herein.

82. The actions of Defendant described above and specifically, without limitation, its knowledge, participation, and inducement of the unauthorized use of the HDMI Trademarks, and confusingly similar variations thereof, in commerce to advertise, market, and sell the Unauthorized Products throughout the United States and California, constitute contributory trademark infringement in violation of federal law and the common law.

83. The actions of Defendant, if not enjoined, will continue. Defendant's acts of unfair competition have caused HDMI LA to sustain monetary damage, loss of money or property, and injury, in an amount to be determined at trial.

84. On information and belief, the actions of Defendant described above were and continue to be deliberate and willful.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff HDMI LA respectfully prays that the Court enter judgment in its favor against Defendant, and that the Court:

1. Enter a preliminary and permanent injunction, pursuant to 15 U.S.C. § 1116(a) and Cal. Bus. & Prof. Code § 17200, prohibiting Defendant and its agents, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, and any entities owned or controlled by Defendant, and/or all other persons acting in concert or participation with Defendant, from: (a) manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Unauthorized Products; (b) directly or indirectly infringing, in any manner, any of Plaintiff's trademarks or other rights (whether now in

existence or hereafter created) including, without limitation the HDMI Trademarks; (c) using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's trademarks, or other rights (whether now in existence or hereafter created) including, without limitation the HDMI Trademarks to identify any goods or services not authorized by Plaintiff and/or on or in connection with Unauthorized Products; (d) using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale, or sold by Defendant with Plaintiff, and/or that any such products originate from and/or are sponsored by Plaintiff; and (e) engaging in any other act in derogation of Plaintiff's rights;

2. Enter an order, pursuant to 15 U.S.C. § 1117(a), awarding HDMI LA: (a) Defendant's profits; (b) HDMI LA's actual damages; (c) the costs of the action; (d) enhanced discretionary damages; as the Court determines to be fair and appropriate; and (e) Plaintiff's reasonable attorney's fees (after finding that this is an exceptional case) for Defendant's willful trademark infringement of the HDMI Trademarks, Defendant's willful and intentional use of marks or designations, knowing such marks or designations are counterfeit marks in violation of 15 U.S.C. § 1114(1)(a), and false designation of origin and unfair competition under 15 U.S.C. §1125(a);

3. Enter an order, pursuant to 15 U.S.C. § 1117(b), awarding HDM LA treble damages in the amount of a sum equal to three (3) times Defendant's profits or Plaintiff's damages, whichever amount is greater, along with Plaintiff's reasonable attorney's fees and prejudgment interest, for Defendant's willful and intentional use of marks or designations, knowing such marks or designations are counterfeit marks in violation of 15 U.S.C. § 1114(1)(a);

4. In the alternative, if HDMI LA so elects prior to the rendering of final judgment, enter an order, pursuant to 15 U.S.C. § 1117(c), awarding HDMI LA statutory damages of up to $2,000,000 per mark per type of Unauthorized Products sold, offered for sale, or distributed, as the Court considers just; and

5. Enter an order, pursuant to California Business and Professionals Code § 17200, awarding HDMI LA restitution of those amounts unlawfully obtained by Defendant through its illegal and infringing conduct, as alleged herein; and

6. Enter an order, awarding HDMI LA such other and further relief as the Court deems just and proper.

DATED: January 4, 2019

**BESHADA FARNESE LLP**

By:  s/ Peter J. Farnese
    Peter J. Farnese

**EPSTEIN DRANGEL LLP**

Jason M. Drangel
jdrangel@ipcounselors.com
Ashly E. Sands
asands@ipcounselors.com
Kerry B. Brownlee
kbrownlee@ipcounselors.com
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone: 212-292-5390
Facsimile: 212-292-5391

*Pro Hac Vice Applications Forthcoming*

*Attorneys for Plaintiff,*
*HDMI Licensing Administrator, Inc.*

**DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands a trial by jury in this action.

DATED: January 4, 2019          **BESHADA FARNESE LLP**

                                By:     s/ Peter J. Farnese
                                        Peter J. Farnese

                                **EPSTEIN DRANGEL LLP**

                                Jason M. Drangel
                                jdrangel@ipcounselors.com
                                Ashly E. Sands
                                asands@ipcounselors.com
                                Kerry B. Brownlee
                                kbrownlee@ipcounselors.com
                                60 East 42nd Street, Suite 2520
                                New York, NY 10165
                                Telephone: 212-292-5390
                                Facsimile: 212-292-5391

                                *Pro Hac Vice Applications Forthcoming*

                                *Attorneys for Plaintiff,*
                                *HDMI Licensing Agent, Inc.*